AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CHRISTOPHER MCGRATH,<br>aka, "David Powers" | DOCKET NO.<br>**13-1024M** | |
| | MAGISTRATE'S CASE NO. | |

Complaint for violation of Title 49, United States Code, Sections 46314(a) and (b)(2)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE MARGARET A. NAGLE | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>MARCH 20, 2013 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about March 20, 2013, in Los Angeles County, within the Central District of California, defendant CHRISTOPHER MCGRATH, also known as "David Powers," knowingly and willfully entered, in violation of security requirements, an airport area that serves an air carrier or foreign air carrier, with intent to evade security procedures or restrictions.

FILED
CLERK, U.S. DISTRICT COURT

APR – 5 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**DAVID GATES** |
|---|---|
| | OFFICIAL TITLE<br>Special Agent – Federal Bureau of Investigation |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1)<br>*Margaret A. Nagle* | DATE<br>April 5, 2013 |
|---|---|

(1) See Federal Rules of Criminal Procedure 3 and 54

AUSA Jamie A. Lang          REC: Detention

A F F I D A V I T

I, David Gates, being duly sworn, hereby depose and state the following:

1.    I am a Special Agent of the Federal Bureau of Investigation ("FBI"), and I have been so employed for over nine years. Since August 2004, I have been assigned to the Los Angeles International Airport ("LAX") Office of the FBI, where I investigate violations of federal law that occur within the airport environment and on board aircraft. My training and experience includes approximately eighteen weeks of basic training at Quantico, Virginia, as well as specialized airport training at FBI-sponsored conferences, training on aviation issues by other agencies such as the National Transportation Safety Board, and on-the-job training at LAX for the past nine years. As to my experiences at the airport, I have investigated breaches of airport security, stowaway allegations, and airport screening crimes.

**PURPOSE OF AFFIDAVIT**

2.    This affidavit is made in support of a criminal complaint and an arrest warrant for CHRISTOPHER MCGRATH, also known as DAVID POWERS ("MCGRATH"), for violating Title 49, United States Code, Sections 46314(a) and (b)(2), knowingly and willfully entering, in violation of security requirements, the secure area of LAX on March

1

20, 2013, with the intent to evade security procedures or restrictions.

3.     The facts set forth in this affidavit are based on my personal observations, training and experience, participation in this investigation, as well as information obtained from other law enforcement officers and witnesses.  This affidavit is intended to show that there is probable cause for the requested arrest and criminal complaint and does not purport to set forth all of my knowledge of or investigation into this matter.

## PROBABLE CAUSE

4.     Title 49, United States Code ("U.S.C."), Section 46314 states, in pertinent part:

a.     Prohibition — A person may not knowingly and willfully enter, in violation of security requirements prescribed under section 44901, 44903(b) or (c), or 44906 of this title, an aircraft or an airport area that serves an air carrier or foreign air carrier.

b.     Criminal Penalty — (1) A person violating subsection (a) of this section shall be fined under title 18, imprisoned for not more than one year, or both.  (2) A person violating subsection (a) of this section with intent to evade security procedures or restrictions or with intent to commit, in the aircraft or airport area, a felony under a law of the United States or a State shall be

2

fined under title 18, imprisoned for not more than 10 years, or both.

5.    Security requirements prescribed under 49 U.S.C. § 44901 include "provid[ing] for the screening of all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation."

6.    As I explain below, I believe that MCGRATH violated 49 U.S.C. §§ 46314(a) and (b)(2) by knowingly and willfully entering the secure area of LAX, without his person or property being screened, and with the intent to evade security procedures or restrictions by climbing over a barbed-wire fence at LAX and hiding in the secure airfield.

7.    On March 20, 2013, I was notified by LAX Airport Police that MCGRATH had been apprehended on the airfield between the Tom Bradley International Terminal and Terminal 3, a restricted and secure area of the airport.  After arriving on the scene, I interviewed Jaime Hernandez ("Hernandez"), who works as an information technology specialist at LAX.  Hernandez stated, among other things, the following:

a.    Hernandez works for a private company at LAX as an information technology specialist.  His office is located at the Tom Bradley International Terminal at LAX near Gate 122 on the airfield

3

(secure) side.  He has worked at LAX since December, 2010.  On March 20, 2013, Hernandez left his office and walked on the airfield toward LAX Terminal Three, along the edge of the terminal.  This is a secure area of LAX.  Hernandez explained that he takes this walk most work days, as he has to check computers at both the Tom Bradley International Terminal and at Terminal Three.

b.   As Hernandez was walking between the Tom Bradley International Terminal and Terminal Three, near a construction area, he saw a man behind a large trash bin on the airfield.  Hernandez stated that he thought it could be a contractor at first, though the man's clothing was dirty.  Hernandez saw the man look at him, step back, and put his head down.  Hernandez said the man looked like he was trying to hide.

c.   Hernandez continued walking to the other side of the trash bin, which took about ten to fifteen seconds.  When he looked for the man, Hernandez saw him lying down on the ground.  At this point, Hernandez said he was certain the man did not belong on the airfield.  Accordingly, Hernandez called the airport police to report a suspicious person on the airfield and waited nearby for an airport police officer to arrive.  The man Hernandez saw behind the trash bin was later identified as MCGRATH.

d.   At no time did Hernandez speak to MCGRATH.

8.   On March 20, 2013, FBI Special Agent Nina Vicencia and I

4

interviewed MCGRATH at LAX on the airfield located between the Tom Bradley International Terminal and Terminal Three.  Before any questioning, MCGRATH was provided with an Advice of Rights form, which was read out loud to MCGRATH in English, the language MCGRATH speaks and understands, as MCGRATH read along.  MCGRATH stated that he understood the form, and agreed to speak with the interviewers.  MCGRATH did not sign the form because he was handcuffed.  MCGRATH then stated, among other things, the following:

a.    When asked when and how he got onto the airfield, MCGRATH stated that he had climbed over a fence the night before (March 19, 2013), and had spent the night behind a trash bin.  MCGRATH agreed to show interviewers exactly where he jumped over the fence.  He subsequently led Special Agent Nina Vicencia and me to a spot approximately fifty yards from where he was found and detained, and which had a view of the perimeter fence near the Tom Bradley International Terminal.

b.    MCGRATH identified the spot where he climbed over the barbed-wire fence, and also described his path from the fence to the trash bin on the airfield.  In addition, MCGRATH explained how he had used his bag to protect himself from the barbed wire on top of the perimeter fence.

c.    MCGRATH asked the interviewers if he could jump back over the fence and go away.  MCGRATH said he just wanted to leave

5

the airport, and maybe go to Colorado instead of going back to jail.

9.    On March 20, 2013, approximately one hour after speaking to MCGRATH while he was in custody on the airfield, FBI Special Agent Nina Vicencia and I interviewed MCGRATH at the LAX Police Station. Prior to the interview, I reminded MCGRATH of the Advice of Rights form that had been read to him approximately one hour earlier, and asked if he was still willing to speak to the agents.  MCGRATH agreed to speak to Special Agent Nina Vicencia and me.  MCGRATH stated, among other things, the following:

a.    MCGRATH said that he is trying to get to Australia because that is where his life is supposed to be.  He went on to say that he will get there one way or another, though he does not know what he would do once he got there.

b.    MCGRATH said that he had jumped the fence at LAX at approximately 11:40 p.m. on March 19, 2013.  Per MCGRATH, he did not attempt to board a plane at that time because, as he jumped the fence, the plane he intended to board was pulling away from the gate. MCGRATH stated that he "didn't make it over the fence in time to get the flight I wanted."  MCGRATH added that had he made it over the fence five or ten minutes sooner, he would have made it to the plane. MCGRATH also said that getting over the fence is getting harder because they know he is trying to do it.  MCGRATH then added that they are not going to stop him from doing it.  Interviewers believed

6

the "they" MCGRATH was referring to was the LAX Airport Police.

c.    MCGRATH described the plane he planned on boarding as having "a kangaroo" on the tail.  He said that his plan was to try to board a plane going to Australia by asking the pilot's permission.  MCGRATH said that he did not have a ticket, but that he was hoping he could get lucky.  He said that he had planned to catch a flight out last night and, if that did not work, he would wait, try and survive there for twenty-four hours, and try again. MCGRATH said that his motive was to "try one more time to get on a plane."  He stated that he was going to ask the plane's captain if he could fly and, if the answer was no, he would jump back over the fence and leave.

d.    MCGRATH said that he could have done a better job of avoiding law enforcement.  For instance, he said that he should have concealed himself while at LAX by getting into the trash dumpster or jumping back over the fence and leaving the airport to avoid being seen.  He further stated that he should have just gotten onto a flight to Hawaii and gone there, rather than be here with law enforcement.

10.  On March 20, 2013, I met with LAX Airport Police Officer Steve Smith, who works in the airport's Crime Scene Investigation department.  Officer Smith provided a photo CD of this incident, which includes multiple photos of the fence where MCGRATH climbed from the non-sterile area to the sterile, or secure, area of the

7

airport, thereby evading airport security procedures and requirements. As reflected in the photographs, there were two visibly posted signs where MCGRATH climbed the fence. The top of each sign reads, "RESTRICTED AREA," followed by language below that reads, "TRESPASSING/LOITERING PROHIBITED BY LAW."

11. On March 21, 2013, I received documents from the LAX Police Department describing prior arrests of MCGRATH at LAX for entering the secure area of the airport, in violation of security requirements.

a. In the past twelve months, MCGRATH has been arrested for trespassing at LAX on April 24, 2012, May 21, 2012, June 15, 2012, June 29, 2012, August 30, 2012, November 11, 2012, and February 16, 2013. He was also arrested at LAX for probation violations on July 1, 2012 and November 4, 2012.

b. On July 31, 2012, Superior Court Judge Stephanie Sautner issued a "stay away" order against MCGRATH. That order stated, among other things, the following:

i. MCGRATH is ordered not to enter LAX without a valid ticket for travel that day.

ii. MCGRATH is ordered not to go within 100 yards of the perimeter fences of LAX.

12. MCGRATH has been interviewed by the FBI at LAX in the past. On June 29, 2012, FBI Special Agent Michael Padar and I interviewed

MCGRATH after he was arrested at LAX for trespassing onto the secure area of the airport.  Before any questioning, MCGRATH was provided with an Advice of Rights form, which was read out loud to MCGRATH in English, the language MCGRATH speaks and understands, as MCGRATH read along.  MCGRATH stated that he understood his rights and signed the form.  During that interview, MCGRATH stated, among other things, the following:

a.    MCGRATH said he understood that he was on probation for three years for pleading guilty to trespassing at LAX.  MCGRATH added that he is not sure what his probation means, but admitted that he knew a judge had ordered him to stay away from LAX.  MCGRATH said he had spent time over the eight days prior, after being released from jail, traveling to other airports, including the Burbank Airport and the San Diego Airport.  MCGRATH decided not to try to get on a flight from either of those airports at that time.

b.    MCGRATH stated that he had no intention of harming anyone.  In addition, MCGRATH admitted that he understood he is supposed to stay away from LAX, but that he chooses not to stay away because that is where the flights he wants to catch are.

c.    Near the end of the interview, interviewers suggested that the only way to stop MCGRATH from trespassing was to lock him up.  MCGRATH agreed.  MCGRATH ended the interview by standing up and telling interviewers that if they were not going to let him try to

9

get on a plane, then they should probably keep him here (in jail).

13. On March 21, 2013, I conducted a criminal history check of MCGRATH. Through my review of police reports and criminal history records for MCGRATH, I am aware that the March 20, 2013 arrest of MCGRATH in the secure area of LAX was at least his tenth arrest at an airport in California in the past year.

## CONCLUSION

14. Based on the foregoing, I believe there is probable cause to arrest CHRISTOPHER MCGRATH, also known as DAVID POWERS, for knowingly and willfully entering, in violation of security requirements, the secure area of LAX on March 20, 2013, with the intent to evade security procedures or restrictions, in violation of Title 49, United States Code, Sections 46314(a) and (b)(2).

/s/

DAVID GATES
Special Agent-FBI

Sworn and subscribed to before me this 5th day of April 2013.

Margaret a. Nagle

UNITED STATES MAGISTRATE JUDGE MARGARET A. NAGLE

10